**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JUSTIN ORSINI,
*Plaintiff*,

v.

HOFFMAN FORD, INC., et al
*Defendants*.

Case No. 3:23-cv-1125 (OAW)

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Justin Orsini, brings this action against Hoffman Ford ("Hoffman") and TD Bank ("TD") for breach of the implied warranty of merchantability, for breach of express warranty, and for violation of Connecticut Unfair Trade Practices Act ("CUTPA"); and against Rocky Ridge Trucks, Inc. ("Rocky Ridge") for violation of CUTPA. Plaintiff alleges that Hoffman and TD sold Plaintiff a 2019 Ford Ranger ("Vehicle") that was not street legal due to the modifications done on it. Plaintiff alleges that Rocky Ridge modified the Vehicle by lifting its suspension by six inches, in violation of Connecticut safety regulation.

Defendant Rocky Ridge moves for summary judgment against Plaintiff on the sole count against it under CUTPA. ECF No. 64. Defendants Hoffman and TD move for partial summary judgment against Plaintiff on the Connecticut Unfair Trade Practices Act ("CUTPA") claim. ECF No. 68. Cross-Defendant Rocky Ridge also moves for summary judgment against Cross-Claimant Hoffman Ford's claim for indemnification under Connecticut common law.[1] ECF No. 65. The court has reviewed Defendants' motions, Plaintiff's responses thereto, Pl.'s Mem. in Opp., ECF Nos. 72–73, Defendant Rocky

[1] Cross-Claimant Hoffman did not respond to Cross-Defendant Rocky Ridge's motion for summary judgment.

Ridge's reply, Defs.' Reply, ECF No. 74, as well as the record in this case. For the foregoing reasons, Defendants Hoffman and TD's motion for summary judgment on the CUTPA claim is **DENIED,** Rocky Ridge's motion for summary judgment as to the CUTPA claim is **GRANTED,** and Rocky Ridge's motion for summary judgment as to the crossclaim for indemnification is **GRANTED.**

## I. BACKGROUND[2]

The facts set forth below are taken primarily from the parties' Local Rule 56(a) Statements and exhibits and are undisputed unless otherwise stated. Pursuant to District of Connecticut Local Rule 56(a)1, each material fact set forth in the moving party's Local Rule 56(a)1 statement and supported by the evidence "will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement" of the non-moving party. D. Conn. L. Civ. R. 56(a)1. Therefore, where Plaintiff "fails to appropriately deny material facts set forth" in Defendants' Rule 56(a)(1) statement, "those facts are deemed admitted." *Barone v. Judicial Branch of Conn.*, No. 3:17-cv-644 (VAB), 2019 WL 7283383, at *11 (D. Conn. Dec. 27, 2019) (citation modified).

### A. Purchase of the Vehicle

Plaintiff purchased the Vehicle from Hoffman on January 3, 2020, and financed the purchase. ECF No. 72-1 ¶ 1. The financing contract was assigned to TD Bank. *Id.* The Vehicle had a door tag indicating that it was altered by Rocky Ridge in June 2019. *Id.* ¶

---

[2] All pagination herein is as generated by the court's CM/ECF system, and from any document therein.

6. Prior to purchasing, Plaintiff did not inform any defendant that he would attempt to register the vehicle in Massachusetts. *Id.* ¶ 13.

### B. <u>Vehicle Door Tag</u>

Rocky Ridge put a door tag on the Vehicle that stated that the "VEHICLE WAS ALTERED BY ROCK RIDGE INC [] AND AS ALTERED IT CONFORMS TO ALL APPLICABLE U.S.A. FEDERAL MOTOR VEHICLE SAFETY, BUMPER AND THEFT PREVENTION STANDARDS AFFECTED BY THE ALTERATION." ECF No. 64 ¶ 6. This door tag was put on the Vehicle prior to Plaintiff purchasing it. *Id.* ¶ 7. The door tag did not use the word "state." *Id.* ¶ 8. Plaintiff alleges that he thought Rocky Ridge's alteration complied with state law, based on the company's reputation and the fact that they provide nationwide service. ECF No. 73 ¶ 8.

Plaintiff never spoke with anyone from Rocky Ridge before, during, or after he purchased the Vehicle, or inquired with Rocky Ridge whether the Vehicle could be repaired. *Id.* ¶¶ 1, 5. Rocky Ridge alleges that Plaintiff's CUTPA claim was based on Plaintiff's belief that the door tag indicated that the Vehicle would be safe to operate in the state that it was sold in. ECF No. 64 ¶ 9. Plaintiff alleges that his CUTPA claim was in part based on that but alleges that "modifying the Vehicle for a Connecticut dealership that was not street legal in Connecticut or neighboring Massachusetts is itself an unfair practice under CUTPA." R. Doc. 73 ¶ 9.

### C. <u>Post-Purchase</u>

After selling the Vehicle to Plaintiff, Hoffman registered it in Connecticut. ECF No. 72-1 ¶ 7. Plaintiff drove the Vehicle for around 26–27 months, primarily in Connecticut. *Id.* ¶ 8. Plaintiff never spoke to any Connecticut state vehicle inspectors and did not have

the Vehicle inspected in Connecticut. *Id.* ¶ 9. Plaintiff had the Vehicle inspected in Massachusetts, and it failed. *Id.* ¶ 12.

On March 21, 2023, Plaintiff emailed an attorney and stated:

> I had hoped to make progress with you negotiating on my behalf but it doesn't feel there is any urgency from Hoffman here. I looked into the CUTPA and the statute of limitations is 3 years which my contract would have expired in Jan 2023 and just outside the window. The only circumstance for a CUTPA lawsuit would have to be put forth by the Attorney General Office.

ECF No. 68, Ex. 3.

Defendants assert that this was an admission that the limitations period for Plaintiff's CUTPA claim expired. ECF No. 72-1 ¶ 4. Plaintiff denies that the statute of limitations period expired in January 2023 and asserts that the statute of limitations was tolled by Governor Lamont's COVID-related executive orders. *Id.* ¶ 4. Orsini initiated this action on August 24, 2023. *Id.* ¶ 2.

**D. <u>Plaintiff's Allegations</u>**

Plaintiff alleges that Rocky Ridge modifies vehicles after they leave the manufacturers line, but before the first retail sale. ECF No. 73-1 ¶ 17. He alleges that the Converter Pool Agreement (CPA) provides that Rocky Ridge shall "assure that the End Products conform in all respects to applicable Federal and State laws, rules and regulations." *Id.* ¶ 19. Plaintiff alleges that Rocky Ridge "solicited" a modification on the Vehicle to Hoffman, which included a "6-inch Suspension Lift System." *Id.* ¶ 23. Plaintiff alleges that Rocky Ridge installs suspension lifts of greater than four inches on vehicles delivered to Massachusetts car dealerships, despite a 2016 correspondence between Rocky Ridge and the Massachusetts Registry of Motor Vehicles (RMV) where the RMV confirms that a four-inch lift package would comply with state code. *Id.* ¶ 30.

Plaintiff alleges that Hoffman was located "within a half-hour of Massachusetts and regularly sells vehicles to Massachusetts customers," ECF No. 72-1 ¶ 14, and also that he discussed the Rocky Ridge uplift package with Hoffman staff, who "assured him" that Rocky Ridge's "geometry and calibrations were at the highest level" and were "100% backed by Ford," *id.* ¶ 22. On the date of the sale, Hoffman had Plaintiff sign a Connecticut Q-1 Supplemental Assignment of Ownership and/or Bill of Sale form, which contained the "preprinted statement '[w]as this vehicle at the time of sale in condition for legal operation on the highway(s) of this state? (*Only Dealers must respond to this question*).'" *Id.* ¶ 23. Hoffman had checked "YES." *Id.* Plaintiff alleges, based on the Rocky Ridge website (which states that it "provides nationwide service"), the Door Tag, his discussions with Hoffman sales staff, and his "prior knowledge [of] Rocky Ridge reputation," he believed the uplift package was compliant in all 50 states. *Id.* ¶¶ 21, 24.

Plaintiff moved to Massachusetts in November 2022. *Id.* ¶ 25. After the Vehicle failed a Massachusetts safety inspection, as the Vehicle "was raised over the three inches permitted by Massachusetts Law," Plaintiff contacted Ford Motor Company to arrange a buyback. *Id.* ¶¶ 26–27. Plaintiff alleges that he was told nothing could be done, because the Vehicle was out of warranty. *Id.* ¶ 27. Plaintiff alleges that he researched possibly selling the Vehicle in another state and discovered that the six-inch lift "is not street legal in many other states, including Connecticut." *Id.* ¶ 28.

Plaintiff filed a complaint with the Connecticut Attorney General's Office, who "tried to mediate with Hoffman." Plaintiff alleges that Hoffman "falsely accuse[d]" Plaintiff of installing the uplift package after they sold it to him. *Id.* ¶ 29. Plaintiff alleges that he "spent a significant amount of time drafting a rebuttal statement" as to Hoffman's

allegation and then waited "a few weeks" for Hoffman's response, which never came. *Id.* ¶ 30. He alleges that this caused him to "unnecessarily delay filing the current legal action." *Id.* ¶ 30.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue as to any material fact and it is clear that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view "the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).

The moving party has the burden of showing that no genuine issue of material fact exists. "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party meets its burden, the non-moving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To defeat a motion for summary judgment, the non-moving party must demonstrate there is a genuine dispute of material fact for trial. He must offer "significant, probative evidence on which a reasonable fact-finder could decide" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256–57. He may not "merely rely upon the allegations contained in the pleadings that raise no more than 'some metaphysical doubt as to the material facts.'" *Anderson v. Romano*, 2010 U.S. Dist. LEXIS 120395, at *7–8 (S.D.N.Y.

Oct. 22, 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986)). Summary judgment is appropriate if the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

Plaintiff brings a claim against Rocky Ridge under CUTPA, alleging that Rocky Ridge engaged in conduct that constituted unfair and deceptive acts (1) by modifying the Vehicle knowing it would be offered for sale to a Connecticut dealership despite not being street legal in Connecticut; (2) by creating and affixing a sticker that "deceptively" stated that the Vehicle conformed to applicable "U.S.A. Federal safety standards"; and (3) by deceptively implying that the Vehicle was street legal. Amend. Compl. ¶¶ 65–66. Plaintiff brings a claim against Hoffman and TD under CUTPA, alleging that they engaged in conduct that constituted unfair and deceptive acts (1) by selling Plaintiff a vehicle that was not legal to operate on roadways; (2) by arranging to have the Vehicle modified by Rocky Ridge to raise the vehicle by six inches, in violation of Conn. Gen. Stat. § 14-62(g), a violation of Conn Agency Reg. § 14-137-25(b); (3) by appending or causing to be appended a sticker on the Vehicle that "contained a deceptive statement" that the Vehicle "conformed to all applicable federal motor vehicle safety standards affected" by the alterations; (4) by registering the Vehicle in Connecticut without disclosing to the Department of Motor Vehicles that the Vehicle had been raised beyond permissible limits;

and (5) by making false statements to the Connecticut Attorney General's office that Plaintiff had requested modifications of the Vehicle. Amend. Compl. ¶¶ 58–59.

Defendants argue that the CUTPA claim was time-barred under the three-year statute of limitations, and in the alternative, that Plaintiff failed to state a claim under CUTPA, as he failed to establish that Defendants engaged in "unfair methods of competition or unfair or deceptive acts or practices." ECF No. 64-8 at 5–6; ECF No. 68-8 at 5–6. The court turns first to the timeliness argument and then addresses the merits.

### A. CUTPA Claim

#### 1. Timeliness

Plaintiff argues, in his motion in opposition to Defendants' motions for summary judgment, that the statute of limitations was tolled by Governor Lamont's Executive Order 7G, which tolled certain deadlines during COVID. ECF No. 72 at 2, 5–6; ECF No. 73 at 2, 15–16. Rocky Ridge argues that Plaintiff's CUTPA claim is time-barred on the face of the complaint, as he raises the tolling argument for the first time in his opposition. ECF No. 74 at 2–3.

Executive Order 7G states that:

> Notwithstanding any provision of the Connecticut Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory … time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings.[3]

"Courts in this Circuit interpreted the [executive] orders to apply to federal court cases involving state law statutes of limitations." *Holguin v. Quality Furniture NY LLC*,

[3] Executive Order 7G is available at https://portal.ct.gov/governor/-/media/office-of-the-governor/executive-orders/lamont-executive-orders/executive-order-no-7g.pdf.

No. 1:23-cv-4, 2024 WL 4954048, at *6 (S.D.N.Y. Nov. 8, 2024) (concluding that New York Governor Cuomo's COVID-era executive orders tolling the statute of limitations applied to state law claims brought in federal court), *report and recommendation adopted*, No. 1:23-cv-4, 2025 WL 50016 (S.D.N.Y. Jan. 8, 2025); *Rutka v. City of Meriden*, No. 3:22-cv-1394 (SVN), 2024 WL 4349033, at *8 (D. Conn. Sept. 30, 2024) ("courts in this circuit have found that similar executive orders issued during the COVID-19 pandemic also tolled state statutes of limitations").

Plaintiff's cause of action arose on January 3, 2020, when he purchased the Vehicle. *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 190 (D. Conn. 2007) (noting CUTPA's three-year limitation period is "triggered upon the occurrence of a violation, not the discovery of the alleged practice"). Governor Lamont's Executive Order took effect on March 19, 2020, and expired on March 1, 2021, pursuant to Executive Order 10A.[4] This tolled the statute of limitations by 347 days. As such, Plaintiff's CUTPA claim—which would have expired on January 3, 2023, if Executive Order 7G had not tolled the date—had not expired by the time he filed this action on August 24, 2023.

Rocky Ridge argues that Plaintiff cannot raise this tolling argument, as he raised it for the first time in his opposition. ECF No. 74 at 2–3. "The court rejects Defendants' argument" that Plaintiff cannot raise his "tolling argument because he raised it for the first time in his summary judgment opposition papers." *Rescia v. Shamas*, No. 10-cv-1841 (GWC), 2015 WL 11237633, at *3, n.4 (D. Conn. Dec. 28, 2015). Accordingly, the court concludes that Governor Lamont's Executive Order tolled the statute of limitations for

[4] Executive Order 10A is available at https://portal.ct.gov/governor/-/media/office-of-the-governor/executive-orders/lamont-executive-orders/executive-order-no-10a.pdf?rev=88bd491c0ddd4079989fe0e5a89f252c.

Plaintiff's CUTPA claim. *Rescia*, 2015 WL 11237633, at *3, n.4; *Rutka*, 2024 WL 4349033, at *8. Plaintiff's email stating that he believed the statute of limitations had expired is irrelevant, as the statute of limitations had not yet expired.

Accordingly, Plaintiff's CUTPA claim is timely. The court turns next to Defendants' arguments that Plaintiff failed to state a CUTPA claim.

**2. Merits**

"[T]o prevail in a private cause of action under CUTPA, a plaintiff must establish that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or property, real or personal, by the plaintiff." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 257 A.3d 874, 889 (Conn. 2021). "To determine whether a practice is unfair or deceptive, courts first look to whether the Commissioner of Consumer Protection has promulgated regulations identifying the practice as a per se violation of CUTPA." *Negron v. Patriot Auto Sales, LLC*, No. 3:17-cv-00583 (JCH), 2019 WL 13215539, at *11 (D. Conn. May 7, 2019), *aff'd sub nom. Negron v. Winer*, 797 Fed. Appx 660 (2d Cir. 2020). "If no regulation covers the practice in question, Connecticut courts apply the Federal Trade Commission's 'cigarette rule.'" *Id.* Under the cigarette rule, the court considers three factors:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businesspersons.

*Id.* (quoting *Edmands v. CUNO, Inc.*, 277 Conn. 425, 451 n.16 (2006)). "A plaintiff's CUTPA claim need not satisfy all three criteria to prevail under the cigarette rule." *Id.* "A

practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Edmands*, 277 Conn. at 451 n.16).

The Connecticut legislature "made violations of a number of statutes per se violations of CUTPA," including a "very broadly" drafted provision, that renders "a violation of *any* law governing the *sale* of motor vehicles a per se violation of CUTPA." *Castellanos-Hernandez v. Suburban Subaru, Inc.*, No. 3:22-cv-728 (OAW), 2024 WL 1344479, at *6 (D. Conn. Mar. 29, 2024) (citing Conn. Agency Reg. § 42-110b-28(b)(23)); *see also Hernandez v. Saybrook Buick GMC, Inc.*, 505 F. Supp. 3d 93, 112 (D. Conn. 2020) (noting that "[u]nder CUTPA implementing regulations, it is a *per se* violation for a car dealership to fail to comply with a state or federal law concerning the sale of motor [v]ehicles") (citation modified); *Rhomes v. Mecca Auto, LLC*, No. 3:21-cv-1360 (KAD), 2022 WL 3082986, at *4 (D. Conn. Aug. 3, 2022) (concluding that plaintiff established a CUTPA claims when the plaintiff established that a car dealership failed to comply with state or federal law concerning the sale of motor vehicles).

In Connecticut, state regulation mandates that "[n]o additional devices shall be installed . . . on any motor vehicle when such installation" either lifts the vehicle "in excess of four (4) inches above the vehicle's unladen height as established by the vehicle manufacturer," or lowers the vehicle as to "reduce the vertical clearance" to less than four inches. Conn. Agency Reg. § 14-137-25(b)(1)–(2). State regulation also mandates that before putting a vehicle out for "retail sale," the dealer "shall complete a comprehensive safety inspection" of the vehicle, which includes the dealer "attest[ing] . . . under penalty of false statement" that the vehicle "has been deemed to be in condition for legal operation

on any" Connecticut highway. Conn. Gen. Stat. § 14-62(g). Here, the Vehicle was lifted by six inches, in clear violation of the four-inch limit, and therefore was not in a condition for legal operation on Connecticut highways. *See* Conn. Agency Reg. § 14-137-25(b)(1); Conn. Gen. Stat. § 14-62(g).

Defendants Hoffman and TD do not counter Plaintiff's argument as to whether he stated a per se CUTPA violation. ECF No. 68-8 at 5–6. In fact, Hoffman and TD did not file a response to Plaintiff's opposition. As previously stated, to determine whether a practice is unfair or deceptive, the court must "first look to whether the Commissioner of Consumer Protection has promulgated regulations identifying the practice as a per se violation of CUTPA." *Negron*, 2019 WL 13215539, at *11. Here, Plaintiff has established that Hoffman violated Conn. Gen. Stat. § 14-62(g) and Conn. Agency Reg. § 14-137-25(b)(1), constituting a per se violation under CUTPA. Accordingly, the court need not conduct an analysis under the cigarette rule as to Hoffman and TD, *see Negron*, 2019 WL 13215539, at *11, and Defendants Hoffman and TD's motion seeking summary judgment as to Plaintiff's CUTPA claim is **DENIED.**

The court now turns to Plaintiff's CUTPA claim against Rocky Ridge. In his amended complaint, Plaintiff alleges that Rocky Ridge committed unfair or deceptive acts by (1) modifying the Vehicle knowing that it would be offered for sale in a Connecticut dealership, despite knowing it was not street legal in Connecticut or Massachusetts; (2) creating and affixing the door tag, which deceptively stated that the Vehicle conformed to applicable "U.S.A. Federal safety standards"; and (3) deceptively implying that the Vehicle was street legal. Amend. Compl. ¶¶ 65–66. In his opposition brief, Plaintiff argues, for the first time, that he is not making a CUTPA claim solely on the grounds of Rocky Ridge's

deceptive or unfair misrepresentations, but rather has been alleging this entire time that his CUTPA claim was also based on Rocky Ridge's alleged omissions. The court will not consider claims raised for the first time in opposition to summary judgment. *Lyman v. CSX Transp. Inc.*, 364 Fed. Appx 699, 701 (2d Cir. 2010) (affirming district court's conclusion that it cannot consider claims raised for the first time in opposition to summary judgment); *see also Morales-Rojas v. Ruiz*, No. 3:04-cv-1512 (JCH), 2019 WL 1025245, at *4 (D. Conn. March 4, 2019) (concluding that a "plaintiff cannot amend his complaint in a memorandum in opposition to a motion for summary judgment").

As to Plaintiff's claims Rocky Ridge made a misleading representation by affixing the door tag stating the Vehicle conformed to federal safety standards—which he argues deceptively implied that it was street legal—Plaintiff fails to establish that Rocky Ridge actually made a misleading representation (or, a representation at all, for that matter).

"An act or practice is actually deceptive under CUTPA when (1) there is a representation . . . likely to mislead consumers; (2) the consumer interpret[s] the message reasonably under the circumstances; and (3) the misleading representation . . . [is] material—that is, likely to affect consumer decisions or conduct." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 288 (D. Conn. 2015) (citation modified).

Here, Rocky Ridge made no misrepresentations as to the Vehicle to Plaintiff. Rocky Ridge put the door tag on the Vehicle stating that the Vehicle met federal safety standards (as required by federal regulation), but Plaintiff attested that he never spoke with anyone at Rocky Ridge when he purchased the Vehicle or afterwards. ECF No. 64 ¶¶ 6–9; ECF No. 73 ¶¶ 1, 8; *Robichaud v. Hewlett Packard Co.*, 48 Conn. Supp. 429,

436–37 (Conn. Super. Ct. 2003), *aff'd*, 82 Conn. App. 848 (2004) (noting that, in the context of a CUTPA claim against a manufacturer, the manufacturer "that makes no representation about the attributes of its product does not commit an unfair trade practice merely because a purchaser may have particular expectations based only on the purchaser's own surmise or supposition"). It appears that Plaintiff surmised that the door tag, which affirmatively stated that the car satisfied all *federal* safety standards, inherently meant that the car satisfied all *state* safety standards.[5] ECF No. 64 Exs. 1, 4. However, Plaintiff's own inference is insufficient to establish that Rocky Ridge made any misrepresentations. *See Robichaud*, 48 Conn. Supp. at 436–37; *see also Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 813 (Conn. 1981) (concluding that there was no CUTPA claim where the defendant had not "affirmatively misrepresented" anything). In fact, Rocky Ridge openly disclosed that the Vehicle had been modified with their K2 modification package (which included a six-inch lift, among the other modifications); and, importantly, Rocky Ridge never represented that the Vehicle met specific state regulation requirements. ECF No. 65-4 at 5–10; *see also Hinchliffe*, 440 A.2d at 813.

Accordingly, Defendant Rocky Ridge's motion seeking summary judgment as to Plaintiff's CUTPA claim is **GRANTED.**

**B. Cross Claim**

Cross-Claimant Hoffman also seeks indemnification against Cross-Defendant Rocky Ridge under Connecticut common law, arguing that if Plaintiff's claims were

[5] Plaintiff points to language in the CPA between Rocky Ridge and Ford Motor Company ("Ford") to support his argument that Rocky Ridge made an affirmative representation. However, the CPA was a contract between Rocky Ridge and Ford, and Plaintiff did not rely on the CPA when he was purchasing the Vehicle. ECF No. 73-3 at 41–59. Further, he raises this argument for the first time in his opposition to summary judgment. *Lyman*, 364 Fed. Appx at 701; *Morales-Rojas*, 2019 WL 1025245, at *4.

established against Hoffman, they were due to Rocky Ridge's "negligent conduct and omissions;" that Rocky Ridge was in exclusive control of obtaining the Vehicle, modifying the Vehicle, failing to investigate whether the modifications were in violation of state law, failing to warn Hoffman that the modifications were in violation of state law, and "providing the impression" that Ford believed that the Vehicle did not violate state law; and that Hoffman had no reason to know or anticipate "Rocky Ridge's failure to ensure" that the modifications violated state law. ECF No. 42 ¶ 41. Rocky Ridge moved for summary judgment as to this cross claim, arguing that Hoffman is "unable to prove the essential elements of its indemnification claim." ECF No. 65-7 at 2. Specifically, Rocky Ridge argues (1) that "Hoffman improperly seeks indemnification for claims other than negligence that are expressly rooted in intentional conduct," (2) that "Hoffman did not have exclusive control of the situation giving rise to Orsini's claims," and (3) that Hoffman "was the immediate cause of Orsini's alleged injury." *Id.*

"To establish a claim for common law indemnification, a party must demonstrate the following four elements: (1) that the other tortfeasor was negligent; (2) that [that] negligence, rather than [the party's], was the direct, immediate cause of the accident and injuries; (3) that [the other tortfeasor] was in control of the situation to the exclusion of [the party]; and (4) that [the party] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent." *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-cv-1600 (MPS), 2018 WL 3998972, at *3 (D. Conn. Aug. 21, 2018) (citation modified) (quoting *Skuzinski v. Bouchard Fuels, Inc.* 240 Conn. 694, 698 (1997)).

Here, Plaintiff's claims against Hoffman were based on intentional conduct at statutory and contract law. Amend. Compl. at 7–12 (raising claims based in contract). Whether an indemnification claim necessarily fails when the claim against them alleges "solely intentional wrongful conduct" is not entirely clear, but courts have held that "the more persuasive reading of Connecticut law" supports the position that indemnification "may be invoked only by negligent third-party plaintiffs." *Id.* at 3–4. And several Connecticut Superior Courts have rejected indemnification for CUTPA claims. *See e.g.*, *Feen v. Benefit Plan Adm'rs, Inc.*, No. NNH-CV-97-0406726-S, 1999 WL 33972, at *8 (Conn. Super. Ct. Jan. 13, 1999) (concluding that plaintiff's complaint alleges a CUTPA violation for which the cross-claimant "may not seek indemnification . . . [because the] commission of an unfair or deceptive trade practice . . . constitutes intentional conduct for which [the cross-claimant] may not seek indemnification"); *Siegel v. Kaesser Constr. Co.*, No. CV90 26 88 03, 1991 WL 35582, at *2 (Conn. Super. Ct. Mar. 5, 1991) ("An action for indemnification will not lie where the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question"); *Peterson v. Hume*, No. HHD-CV-11-5035394-S, 2015 WL 1919433, at *5 (Conn. Super. Ct. Mar. 30, 2015) (noting that "[a]lthough there is no appellate court decision on point, the majority of Superior Court Judges who have addressed the issue have held that there is no common-law action for indemnification when the first-party action is based solely on intentional conduct"; collecting cases).

Although Hoffman styles its crossclaim to be rooted in negligence, Plaintiff's claims against Hoffman concerns Defendants alleged intentional conduct. Plaintiff alleges that Hoffman "failed or refused" to "cure the breach of the implied warranty of merchantability"

in addition to "[making] affirmations of fact or promises that became part of the basis of the bargain." Amen. Compl. ¶¶ 45, 52. Plaintiff also alleges that Hoffman sold him "a vehicle that was not legal to operate on roadways"; "arranged to have the [Vehicle] modified by Rocky Ridge"; "appended or caused to be appended a sticker on the [Vehicle]"; "registered the Vehicle in Connecticut"; and "made false statements to the office of the Attorney General." *Id.* ¶ 58. Although there is a narrow exception "to the general rule against common law indemnification" for intentional conduct, Connecticut state courts have declined to extend common law indemnification to intentional or reckless conduct. *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 20-cv-1393 (KAD), 2022 WL 788507, at *3, 7 (D. Conn. Mar. 15, 2022) (dismissing indemnification claim based on intentional conduct).

Accordingly, Hoffman's indemnification claim against Rocky Ridge fails, as it seeks indemnification for claims based on intentional conduct, *see Associated Constr.*, 2018 WL 3998972 at *3, and Rocky Ridge's motion for summary judgment as to the crossclaim is **GRANTED**.

## IV. CONCLUSION

For the reasons discussed herein, the court hereby **DENIES** Defendants Hoffman and TD's motion for summary judgment **(ECF Nos. 66, 68)**, **GRANTS** Defendant Rocky Ridge's motion for summary judgment **(ECF No. 64)**, and **GRANTS** Cross-Defendant Rocky Ridge's motion for summary judgment as to Cross-Claimant Hoffman's claim for indemnification **(ECF No. 65)**. Within 14 days of this ruling, the parties are instructed to jointly file a status report indicating: (1) whether the parties would like to renew their

settlement conference with Judge Richardson; (2) whether the parties consent to a referral to a different United States Magistrate Judge to preside over a jury or bench trial in this case; and (3) a reasonable dispositive motion briefing schedule. Thereafter, the court will issue such referral(s) or will schedule the dispositive motion deadlines.

**IT IS SO ORDERED** in Hartford, Connecticut, this 16th day of September, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE